# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JUANITA GRIFFIN PADGETT** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 23-1468** |
| **SOCIAL SECURITY ADMINISTRATION** | **DIVISION "5"** |

## ORDER AND REASONS[1]

Plaintiff Juanita Griffin Padgett filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). The matter has been fully briefed, and the issues are thus ripe for review. For the following reasons, **IT IS ORDERED** that Plaintiff's motion for summary judgment is **DENIED**, the Commissioner's brief is **ADOPTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

## I.   BACKGROUND

Plaintiff filed her original application for DIB on May 21, 2020, alleging a disability onset date of April 3, 2020. (Adm. Rec. at 69-70, 364-67). Plaintiff alleged disability due to carpal tunnel syndrome, osteoarthritis of the hands and fingers, swelling of the knees, inability to stand for long periods of time, asthma, chronic obstructive pulmonary disease ("COPD"), and limited ability to walk. (*Id.* at 70). Plaintiff, born on November 2, 1958, was 61 years old on the date on which she alleged onset of disability and 62 years old on the date she filed her application. (*Id.* at 290). Plaintiff has a GED, and she has past relevant work experience as a bill collector and a shift leader at a restaurant. (*Id.* at 304).

---

[1] The parties consented to proceed before the undersigned under 28 U.S.C. § 636 on November 17, 2023. (Rec. doc. 16).

Defendant initially denied Plaintiff's application on February 10, 2021, (*id.* at 67), and upon reconsideration on June 1, 2021. (*Id.* at 91). On September 9, 2021, Senior Attorney Adjudicator ("SAA") Melinda Yurich issued a fully favorable decision to Plaintiff. (*Id.* at 116-24). The SAA concluded that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of sedentary work and could not perform her past relevant work. (*Id.* at 119-21). Considering Plaintiff's age, education, work experience, and established RFC, the SAA determined that Plaintiff would "grid out" under the Medical Vocational Rules.[2] (*Id.* at 121); 20 C.F.R. Part 404, Subpart P, App'x 2, § 201.06. She thus found Plaintiff disabled. (Adm. Rec. at 122).

On November 29, 2021, the Appeals Council ("AC") reviewed the SAA's decision, vacated it, and remanded the case to an Administrative Law Judge ("ALJ"). (*Id.* at 125-32). The AC determined, as an initial matter, that the record was insufficiently developed to support a finding of disability when "the last available medical evidence in the claimant's file" was provided six months before the SAA's determination. (*Id.* at 128). The AC also concluded that the record was inconsistent with the RFC and that the hearing decision did not contain a sufficient rationale to support the RFC. (*Id.* at 128). Moreover, the AC found that the evidence indicated that Plaintiff had additional work not reflected in the decision. (*Id.* at 130). Further, the AC held that Plaintiff's work history required clarification including the exertional levels of work performed. (*Id.* at 130).

---

[2] "Grid out" means that there are no jobs that exist in significant numbers in the national economy that a claimant can perform.

Plaintiff appeared and testified at a hearing before the ALJ on September 20, 2022. (*Id.* at 36-66). Plaintiff, who was represented by counsel, and a vocational expert ("VE"), Jennifer Sullivan, testified at the hearing.

On November 4, 2022, the ALJ issued a decision in which she concluded that Plaintiff was not under a disability from her alleged onset date through the date of the decision. (*Id.* at 19-28). In the decision, the ALJ concluded that Plaintiff has the severe impairments of lumbar degenerative disc disease, right shoulder degenerative joint disease, coronary artery disease status post stenting, right knee degenerative disc disease status post right total knee arthroplasty, and COPD. (*Id.* at 22). The ALJ held that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listed impairment under the regulations. (*Id.* at 23). The ALJ found that Plaintiff

> has the residual functional capacity to occasionally lift and carry 10 pounds and frequently lift and carry less than 10 pounds, to stand and walk with normal breaks for a total of 2 hours in an 8-hour day, and to sit for a total of 6 hours in an 8-hour day, with the following additional limitations. She requires a hand-held assistive device for ambulation. She is never able to climb ladders, ropes, or scaffolds. She is occasionally able to climb ramps and stairs, kneel, crouch, and crawl. She is frequently able to balance and stoop. She is occasionally able to reach overhead with the right, dominant, upper extremity. She must avoid concentrated exposure to extreme heat, wetness, and humidity. She must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation in the workplace.

(*Id.* at 24). The ALJ determined that Plaintiff is able to perform her past relevant work as a collection clerk. (*Id.* at 27). The ALJ thus concluded that Plaintiff was not disabled from April 3, 2020 through the date of the decision. (*Id.* at 28).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that she was not disabled from April 3, 2020 through the date of the ALJ's decision. (*Id.* at 13). On March 24,

2023, the Appeals Council denied Plaintiff's appeal. (*Id.* at 1-5). Plaintiff then timely filed this civil action.

## II. STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues de novo, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503

4

U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey*, 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

## III. ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable not only to do previous work, but cannot, considering age, education and work experience, participate in any other kind of substantial gainful work that exists in significant volume in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from

engaging in any substantial gainful activity. *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Id.* at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999)). If the ALJ determines that a Plaintiff is not disabled under step five of the five-part test, the Commissioner must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step five also requires the Commissioner to use the medical-vocational guidelines to make a disability determination. *Id.*

6

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV.   ISSUES ON APPEAL

There are two issues on appeal:

(1)   Whether the ALJ properly evaluated the opinion of Plaintiff's treating physician, Michael Gaglia, M.D.

(2)   Whether substantial evidence supports the ALJ's conclusion that Plaintiff can perform her past relevant work.

## V.   ANALYSIS OF THE ISSUES ON APPEAL

### (1)   Whether the ALJ properly evaluated the opinion of Plaintiff's treating physician, Michael Gaglia, M.D.

On January 18, 2017, Defendant adopted new rules for claims filed after March 27, 2017 that modify the rules for evaluating opinion evidence. 82 F.R. 5844, 5869 (Jan. 18, 2017). As Plaintiff filed her claim on May 21, 2020, the new rules apply here. Factors that an ALJ must consider when evaluating medical opinion evidence include: (1) Supportability; (2) Consistency; (3) Relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) Specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors. *Id.* § 404.1520c(b)(2). The regulations dictate that the ALJ "will explain" how the

7

supportability and consistency factors were considered in the determination or decision. *Id.* § 404.1520c(b)(2). The ALJ may, but is not required to, explain how she considered the other remaining factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. *Id.* § 404.1520c(b)(3). Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must now "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* §§ 404.1520c(a) and (b)(1).

The revised regulations also clarify how evidence from Federal- and State-agency medical and psychological consultants – now deemed prior administrative medical finding(s) (except for the ultimate determination about disability) – is considered. They provide that, while ALJs are not required to adopt prior administrative medical findings, they must still consider this evidence in accordance with Defendant's regulations as appropriate, inasmuch as Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation. *Id.* § 404.1513a(b)(1) (citing *id.* §§ 404.1520b, 404.1520c, 404.1527).

On July 5, 2022, treating physician, Dr. Michael Gaglia, completed a cardiac RFC questionnaire. (*Id.* at 910). Gaglia had been treating Plaintiff for her dyspnea on exertion and dizziness. (*Id.*). He noted that Plaintiff underwent a coronary angiogram in July 2020 and an ultrasound in June 2022. (*Id.*). Plaintiff's symptoms included shortness of breath and dizziness, complications related to her coronary artery disease, and peripheral artery

8

disease. (*Id.*). Gaglia opined that Plaintiff had a marked limitation in her ability to engage in physical activity due to fatigue, palpitations, dyspnea, or angina discomfort on ordinary physical activity, even though she was comfortable at rest. (*Id.* at 911). She would occasionally experience pain or symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks for up to a third of the workday. (*Id.*). She could walk no more than one to two blocks before needing rest or because of her severe pain. (*Id.*). She could sit one to two hours at one time and stand one hour at one time. (*Id.*). She would be absent from work about one day per month. (*Id.*).

The ALJ concluded that Gaglia's opinion was persuasive "to the extent it is consistent with a limitation to sedentary work," but not insofar as he opined that Plaintiff would be absent one day per month or that she would experience interference with attention and concentration needed to perform even simple tasks for up to a third of the workday. (*Id.* at 27). The ALJ found that Gaglia's opinion was "consistent with these evidentiary considerations only to the extent it [was] consistent with the [agency] consultants' proposed limitations." (*Id.* at 27). The state-agency medical consultants ("SAMCs") had not opined that Plaintiff would be absent one day per month or that she would experience interference with attention and concentration needed to perform even simple tasks for up to a third of the workday. (*Id.* at 67-115). The ALJ properly relied on the lack of limitations expressed by the SAMCs' reports. (*Id.* at 67-115).

Plaintiff cites to the clinical evidence, including stenosis (narrowing) of the arteries, regurgitation (blood leaking backward), and vascular disease, that she maintains are clearly supportive of and consistent with the limitations identified by Gaglia, which manifest in the

9

form of fatigue with exertion and dizziness as reported by her. Plaintiff contends that under the new regulations, the ALJ has an affirmative obligation to explain how the evidence supports her findings. To that end, Plaintiff argues that she may not provide scant reference to or mischaracterize the evidence in the record. *See Edwards v. Kijakazi*, Civ. No. 4:22-cv-00520, 2023 WL 2386748 (S.D. Tex. Mar. 6, 2023) (finding that "[a] reference to the entire record is precisely the scant 'general assertion' that disregards the ALJ's affirmative duty to 'explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions."), *reported and recommendation adopted*, Civ. No. 4:22-cv-00520, 2023 WL 2616018, at *9-12 (S.D. Tex. Mar. 22, 2023). The Court finds no merit in these arguments.

Regarding supportability and consistency, the ALJ noted that Plaintiff's clinical cardiac signs and lab testing had been mostly normal or mildly abnormal "save for the July 2020 catheterization that led to the stenting." (Adm. Rec. at 27). Specifically, regarding Plaintiff's COPD, the ALJ stated that clinical respiratory signs had been mostly normal; PFTs had been generally in the 70s in terms of percentage of predicted value, though this is without bronchodilator. (*Id.* at 27). In the record, the ALJ referenced a January 2020 echocardiogram that was mild or normal in its results, including an ejection fraction ("EF") of 60-65 percent. (*Id.* at 26, 529-530). A June 2020 perfusion study was only mildly abnormal overall and included a (normal) EF of 60 percent. (*Id.* at 26, 572-573). Echocardiograms conducted in June 2020 and March 2022 were essentially normal and included an EF of 60-65 percent. (*Id.* at 26, 811). Further, treatment for Plaintiff's COPD had been conservative apart from her January-February 2020 hospitalization. (*Id.* at 27). The

10

ALJ noted that other than stenting, treatment for the coronary artery disease had been conservative. *See Parfait v. Bowen*, 803 F.2d 810, 813-14 (5th Cir. 1986) (stating that evidence that a claimant receives conservative treatment substantially supports an ALJ's adverse finding against complaints of incapacity).

The Court finds that the ALJ pointed to specific evidence indicating why Gaglia's opinion in its entirely was not completely persuasive. In *Silva v. Kijakazi*, the Fifth Circuit recently emphasized: "As we've noted time and again, an 'ALJ is not always required to do an exhaustive point-by-point discussion' of the evidence she reviews." No. 22-51045, 2023 WL 3723628, at *1 (5th Cir. 2023) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). The pertinent question is not whether the ALJ presented an arbitrary level of detail, it is whether the decision contains a sufficient articulation to identify the evidentiary choices made by the finder of fact. As is the case here, the claimant in *Silva* argued "that the ALJ didn't properly 'articulate *how*' the doctor's opinions weren't supported by the record." *Id.* at *1 (emphasis in original). However, the Fifth Circuit held that "the ALJ clearly explained the shortcomings" in the evidence by delineating evidence that contradicted Plaintiff's conclusions. *Id.* In this case, the ALJ outlined evidence that contradicts Plaintiff's assertion and Gaglia's opinions, and this issue does not warrant remand.

### (2) Whether substantial evidence supports the ALJ's conclusion that Plaintiff can perform her past relevant work.

At step four of the sequential evaluation process, the ALJ concluded that Plaintiff performed past relevant work as a collection clerk at earnings sufficiently high enough to qualify such performance as substantial gainful activity, and long enough to have learned it, given its specific vocation preparation ("SVP") requirements. The ALJ found that "the

11

claimant has past relevant work as a collection clerk, as that work is generally performed."

(Adm. Rec. at 28). Plaintiff maintains that this finding is in contravention to the VE's testimony at the oral hearing. Specifically, Plaintiff points to the following exchange between her counsel and the VE:

> Q: Okay. And I know the DOT hasn't been updated in quite a while, but just based on your expertise and training and experience, how is that specific DOT job title – how similar would doing it now if Ms. Padgett or any hypothetical individual tried to do it – tried to perform it today in 2022, or since 2020 or – year, 2020 versus when Ms. Padgett did it in 2008?
> A: It's still telephonic. There are many similarities. Certainly, probably the computer skills are going to be somewhat different, as that's a [sic] ever changing field.
> Q: Right.
> A: So, there would be some need for understanding those changes, but those would be the primary ones that I would foresee.
> Q: Would it be fair to say that in 2008 that job probably involved, like filing and file folders, physical file folders, physical filing, filing cabinets, paper reports? Would that be correct?
> A: Certainly, it would be more paper prominent. I don't know that there's typically in my mind, a lot of significant filing in that type of job, although there may be some. But I agree with you, paper would have been more prominent during that time period than it is now.
> Q: And would that – and today, if you were a call clerk, would that involve the ability for whoever you're calling to be able to go online and pay?
> A: Yes, I think that would probably be an option, depending on the job, the employer and how up to date their mechanisms were. But I think that certainly would be more prominent and more of an option than it was 15 years ago.
> Q: Okay. And I'm guessing 15 years ago, going back, it was probably technologically possible, but it was probably unlikely that people were paying a lot of bills or collections online in 2008. Would that be fair to say?
> A: I think that is realistic.

(*Id.* at 63-64). In short, Plaintiff contends that the current use of computers in the field of bill collection – when computers were not prevalent when Plaintiff performed the job of bill collector in 2006, 2008, and maybe 2009 – renders her past work irrelevant as it is performed differently now than when she performed the job.

12

Social Security Ruling ("SSR") 82-62 directs the ALJ to consider and discuss the mental and physical demands of an individual's past relevant work when determining whether the individual can perform that work. *See* SSR 82-62, 1982 WL 31386, at *2 (Jan. 1, 1982). In order to find that an individual can perform her past relevant work, the ALJ's decision should contain (1) a finding of fact as to the individual's RFC; (2) a finding of fact regarding the physical and mental demands of the past relevant work; and (3) a finding of fact that the individual's RFC would permit her to return to her past relevant work. *Id.* at *4. SSR 82-62 explains that the claimant is the primary source for vocational documentation, and the claimant's statements regarding her past work are generally sufficient for determining the exertional demands of such work. *Id.* at *3. Although an ALJ may rely on a VE's testimony to support a step four finding, *see* 20 C.F.R. § 404.1560(a)(2), a VE's testimony is not necessary to find that a claimant can perform her past relevant work. *See Williams v. Califano*, 590 F.2d 1332, 1334 (5th Cir. 1979).

As can be seen from the testimony cited above, the VE never specifically testified that, as generally performed, the work of a collections clerk now requires computer skills in order for Plaintiff to be able to perform that job. (Adm. Rec. at 63-64). Like the job of a collection clerk that Plaintiff performed in 2006, 2008, and 2009, the VE testified that currently it is "still telephonic. There are many similarities." (*Id.* at 63). She also noted that "[c]ertainly, probably the computer skills are going to be somewhat different, as that's a [sic] ever changing field." (*Id.* at 63).

13

But even if the collections clerk job now as generally performed requires the use of computer skills, the record indicates that Plaintiff possesses computer skills, as she used a computer in her past collections position as she performed it:

> The claimant worked as a bill collector in an office from 1999 to 2007. She made $23,000-24,000 per year, working 8 hours per day, 5 days per week. The claimant was responsible for contacting customers in debt to companies. She informed customers of balances due and collected payments. The claimant utilized a phone and *computer*.

(*Id.* at 89) (emphasis added). Indeed, in the AC's order of remand dated November 29, 2021, the AC noted that as a bill collector, Plaintiff "indicated that she contacted customers in debt to companies, informed customers of balances due, collected payments, and escalated accounts to credit agencies. . . . The claimant indicated that she used a phone and *computer*. . . ." (*Id.* at 130) (emphasis added). A Report of Contact dated June 1, 2021, indicates that "claimant utilized a phone and computer working exclusively in an office/call center environment." (*Id.* at 416). Thus, even if the ALJ did not specifically find that the job of a collection clerk might currently involve computer usage, Plaintiff is able to perform her work satisfactorily as a collections clerk with use of both a phone and a computer. The evidence of record belies Plaintiff's argument, given that even if the job of a collections clerk now requires the use of computer skills, Plaintiff demonstrated past usage of computer skills in her previous collections position.

## VI.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion for summary judgment is **DENIED**, the Commissioner's brief is **ADOPTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

14

New Orleans, Louisiana, this 4th day of _____December_____, 2023.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**
